FILED

2023 Dec-14  AM 10:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

A.B.,[1]

    Plaintiff.


v.                                                                          Case No. _____

UNITED STATES OF AMERICA,

    Defendant.

## COMPLAINT

Plaintiff, A.B., was raped and otherwise sexually assaulted, battered and abused by a Bureau of Prisons ("BOP") employee while incarcerated at Federal Correctional Institution Aliceville ("FCI Aliceville") in Aliceville, Alabama.  By and through her attorneys, A.B. brings claims based upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* and/or other applicable law. As a result of being repeatedly raped, sexually assaulted and abused by a BOP employee while she was an inmate at FCI Aliceville, A.B. suffered injuries to her person, including, but not limited to physical battery, sexual abuse, sexual assault, and the dignitary injury of being forced to endure sexual activity to which she had neither the legal nor volitional capacity to consent, and from which she had no lawful means of escape. For her complaint against the Defendant, A.B. states as follows:

## PARTIES

---

[1] These initials, and all initialized references to inmate victims of sexual assault at FCI Aliceville, are pseudonyms used to protect the subjects' identities for personal safety reasons. These individuals have legitimate fears of retaliation from prison officials and/or present or former inmates for making public allegations regarding prison officials.

1. Plaintiff A.B. was, at all times relevant to this complaint, in the custody of the Federal Bureau of Prisons ("BOP"), including at FCI Aliceville, which is the prison facility located within the Northern District of Alabama where the physical battery, sexual abuse, and sexual assaults described herein occurred.  A.B. currently remains in BOP custody at FCI Tallahassee in Tallahassee, Florida.

2. Defendant United States of America is a sovereign entity named herein pursuant to the Federal Tort Claims Act and oversees the Federal Bureau of Prisons, which is responsible for the care and custody of federal inmates, including those placed in the custody of the BOP at FCI Aliceville.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1346 (b)(1) as the claims in this case are brought against the United States of America under the Federal Tort Claims Act, 28 U.S.C. 2671, *et seq.*

4. Plaintiff filed an Administrative Claim (Standard Form 95) against the Defendant, which was received and acknowledged by the Federal Bureau of Prisons Consolidated Legal Center on June 6, 2022.

5. Although the acknowledgement letter stated that an answer to A.B.'s claim "will be mailed on or before December 7, 2022", no answer or response has been received as of the date of this filing.

6. Plaintiff has exhausted all obligatory administrative remedies, and this matter is ripened for the bringing of this civil action against Defendant United States of America.

2

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1402(b), as the acts and omissions complained of by Plaintiff occurred in Pickens County, Alabama, which is in the Northern District of Alabama, Western Division.

## FACTS

8. At FCI Aliceville, the BOP employs various facilities staff, including food service personnel. The food service personnel are trained, managed, overseen, and paid by the BOP through the United States Department of Justice.

9. As a federal inmate, A.B. was committed to the Defendant's care, custody, and control, and while in such custody, federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide protection … of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3).

10. As a federal inmate, A.B.'s options for escaping physical battery or sexual assault or for resisting the sexually abusive conduct of a BOP employee were limited. A.B. – like all inmates at FCI Aliceville – relied on employees of the BOP to protect her from sexual abuse by other employees and staff.

11. During the relevant time period, the Defendant employed two individuals in food service positions at FCI Aliceville—Jorge Lopez and Benjamin C. Hand.  Jorge Lopez ("Lopez") was employed as an Assistant Food Service Administrator, and Benjamin C. Hand ("Hand") was employed as a Food Service Administrator.

12. As an Assistant Food Service Administrator, Lopez was responsible for, among other things, supervising inmates assigned to work in food service at FCI Aliceville, including the Plaintiff A.B.  As a Food Service Administrator, Hand was responsible for, among other

things, supervising food service staff, including Lopez, and supervising inmates assigned to work in food service at FCI Aliceville, including the Plaintiff A.B.

13. Lopez and Hand were acting under color of law and within the scope of their employment with the Defendant at all relevant times.

14. As a condition of their employment, Lopez and Hand were or should have been required to attend and complete the BOP's Correctional Training Program, Phases I (an introductory two-week course) and II (a three-week long course). Lopez and Hand were or should also have been required to attend an additional week of training specific to the supervision of female offenders. Moreover, annually, or otherwise periodically, Lopez and Hand should have received refresher training and continuing education on the prohibition against sexual abuse of inmates.

15. The BOP's policies are contained in documents called "program statements" which set forth rules and procedures that all BOP employees are required to follow.

**BOP Program Statement 3420.11 – Standards of Employee Conduct**

**16.** Program Statement 3420.11 sets out the duties and responsibilities of all BOP employees. It requires that "Employees must:… As soon as practicable (but no later than 24 hours) report to their CEO (or other appropriate authority such as the Office of Internal Affairs or the Office of the Inspector General) any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation. Every employee is required to immediately report to management any act or omission by any person that could result in a breach of institution security. Failure by employees to follow these regulations and policy or any other Bureau policy or relevant regulation(s) could result in disciplinary action, up to and including removal."

17. Program Statement 3420.11 mandates that: "An employee shall not engage in, or allow another person to engage in, sexual behavior with an inmate. There is never any such thing as *consensual* sex between staff and inmates."

18. Program Statement 3420.11 defines sexual contact and the consequences of any violations.

19. Program Statement 3420.11 states that: "Employees are subject to administrative action, up to and including removal, for any inappropriate contact, sexual behavior, or relationship with inmates, regardless of whether such contact constitutes a prosecutable crime. Physical contact is not required to subject an employee to sanctions for misconduct of a sexual nature."

20. Program Statement 3420.11 further states that "Title 18, U.S. Code Chapter 109A provides penalties of up to life imprisonment for sexual abuse of inmates where force is used or threatened. Sexual contact is defined as the intentional touching of the genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person. All allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution."

21. Each new BOP employee, contractor, and volunteer must receive and sign a form acknowledging receipt of Program Statement 3420.11.

22. As a condition of their employment, Lopez and Hand did or should have signed acknowledgements that they received the updated version of Program Statement 3420.11.

**BOP Program Statement 5324.12 - Sexually Abusive Behavior Prevention and Intervention**

**23.** BOP Program Statement 5324.12 contains directives requiring BOP officials to timely report and investigate any information regarding sexual assault in any of its facilities.

24. BOP statement 5324.12, § 115.61 requires that "[a]ll staff *must* report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or, where appropriate, in accordance with the Program Statement [3420.11,] Standards of Employee Conduct."

25. BOP Statement 5324.12, § 115.71 also contains directives regarding sexual assault investigations.

26. BOP Statement 5324.12, § 115.71 requires "prompt[], thorough[], and objective[]" investigations into all reports of sexual abuse or harassment.

27. BOP Statement 5324.12, § 115.71 provides a reporting chain following sexual abuse allegations: the Warden must be immediately notified, who must notify the Regional Director and the Office of Internal Affairs, who must notify the Office of the Inspector General, and where appropriate, the Federal Bureau of Investigations.

28. BOP Statement 5324.12, § 115.71 requires that the investigation be "documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings."

29. BOP Statement 5324.12, § 115.71 requires that the investigation must "include an effort to determine whether staff actions or failures to act contributed to the abuse."

30. BOP Statement 5324.12, §§ 115.61(a), 115.71 require reporting of sexual abuse incidents no later than 24 hours and the immediate investigation of reports.

31. BOP Program Statement 5324.12 implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and provides guidelines to address prohibited and/or illegal sexually abusive behavior, specifically including "Staff perpetrator against inmate victim."

32. Program Statement 5324.12 is the controlling BOP policy addressing the prevention of, and intervention upon, sexually abusive behavior. It is disseminated agency-wide and applies to all facilities operated by the BOP and every staff member working within each correctional facility.

33. Program Statement 5324.12 lays out duties and responsibilities with respect to conduct for all BOP employees, and mandates particular staff and agency reporting duties with respect to sexually abusive behavior, including concerning incidents or possible incidents of sexual abuse or sexual harassment.

34. Program Statement 5324.12, § 115.61(a) quotes 28 C.F.R. § 115.61's requirement that the BOP "shall require all staff to report immediately and according to [BOP] policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the [BOP]; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."

35. BOP policy requires the training of all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures.

36. Inmates, employees, and members of the public may file a complaint at the BOP facility where an incident of sexual abuse occurred; through BOP's Office of Internal Affairs; or with the Department of Justice Office of Inspector general (OIG).

37. In accordance with the agency's own Standards of Employee Conduct, BOP employees must report any violation of those Standards, or any rule or law within one business day of the incident to their Chief Executive Officer (CEO), OIA, or the OIG. Decisions regarding

disciplinary action in cases where the allegations are sustained are managed by BOP's Human Resources Management (HRM) and BOP's Office of General Counsel.

**The Sexual Abuse and Sexual Assaults of A.B.**

**38.** At all times relevant to this complaint, Lopez worked as an Assistant Food Service Administrator at FCI Aliceville and routinely reported for his daytime shifts from Monday through Friday each week.

39. At all times relevant to this complaint, Plaintiff A.B. was an inmate at FCI Aliceville who was assigned to work in food service under the direct supervision of Lopez.

40. A.B. routinely reported for daytime shifts from Sunday through Thursday each week.

41. Upon information and belief, Lopez shared an office with his direct supervisor and fellow BOP employee, Hand.

42. Lopez began systematically isolating and raping A.B. on a nearly daily basis in that shared office.

43. On December 23, 2021, a fellow inmate witnessed Lopez sexual assaulting her and, upon information and belief, filed a PREA report.

44. On at least two occasions, Hand had entered the office and caught Lopez isolating A.B. there.

45. Upon information and belief, Hand knew or should have known Lopez was isolating A.B. for sexual assault.

46. Upon information and belief, Hand did not make a report.

47. The abuse had commenced on or around October 15, 2021, when Lopez began making overt sexual comments to A.B. while she worked her shifts in food service. Lopez repeatedly commented on A.B.'s physical appearance and inquired about the colors of her underwear.

48. Within approximately one week, Lopez pulled A.B. from her position on the serving line and instructed her to follow him to his office. Once in the office, Lopez began physically groping A.B., forced his hands into A.B.'s pants and shirt, and used his fingers to repeatedly and forcefully penetrate her.

49. At the end of November, 2021, Lopez isolated A.B. in his office and raped her via full penetration intercourse.

50. Following that instance, Lopez proceeded to serially assault and rape A.B. on a nearly daily basis.

51. A.B. did not consent to any sexual contact, abuse, or assault, nor did she have the capacity to do so under BOP Program Statement 3420.11.

52. A.B. understood that Lopez was her supervisor and that he was in a position to invoke retaliatory punishment if she attempted to defend herself during an attack.

53. A.B. did not report these physical batteries, sexual abuses, and/or sexual assaults by Lopez for fear of retaliation by Lopez and Hand and the other guards and staff at FCI Aliceville.

54. After a fellow inmate witnessed and reported Lopez sexually assaulting A.B. on December 23, Warden Garrett and Captain Moseby, both employees of the Defendant at FCI Aliceville, interrogated A.B. and repeatedly asked whether she was the "perpetrator" of the sexual abuse.

55. After interrogating A.B., FCI Aliceville staff immediately placed A.B. in the Segregate Housing Unit (SHU) on December 24, 2021, where she remained until February 8, 2021.

56. BOP policy mandates that the SHU is not to be used as a means of punishing victims of sexual abuse or sexual assault. Yet, this is precisely the way that the SHU was used in A.B.'s case.

57. Pursuant to BOP policy, each facility that assigns an inmate who has been sexually abused or sexually assaulted by staff to involuntary segregated housing is to do so only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.

58. A.B. was housed in SHU from December 24, 2021, until February 8, 2022, a total of 46 days.

59. In cases where an involuntary segregated housing assignment is made for the purpose of separating an inmate from staff who has sexually abused or sexually assaulted her, BOP policy requires clear documentation of: (1) the basis for the facility's concern for the inmate's safety; and (2) the reason why no alternative means of separation can be arranged.

60. A.B.'s confinement in SHU was not subjected to the formal reviews required by BOP policy after 72 hours, nor was it reviewed at 30-day intervals thereafter.

61. A.B. was not provided with an explanation, nor was she told the rationale for her extended confinement in SHU.

62. BOP policy mandates that when an inmate is placed in special housing involuntarily, for the purpose of protecting the inmate from further sexual abuse, access to programs, privileges, education, or work are not to be interrupted, to the extent possible.  If they are limited, the Chief of Correctional Services is required to ensure that documentation exists reflecting the limitation, duration, and rationale for limitation.

63. While Plaintiff remained in SHU, the BOP failed to ensure that her access to programs, privileges, education and work were not interrupted.

64. While Plaintiff remained in SHU, the BOP refused A.B. feminine sanitary products for the entire course of her menstrual period, which was inhumane punishment and meant that she bled into her clothes for days.

65. While Plaintiff remained in SHU, the BOP confiscated all of A.B.'s personal belongings.

66. After being held in SHU for several weeks, A.B. was released on February 8, 2022, and then transferred to FCI Tallahassee.

67. In early March, Lt. Love, an SIS investigator, informed A.B. that the "formal investigation" into her sexual assault was going to begin—45 days after the sexual assault was uncovered.

68. After arriving at FCI Tallahassee, A.B. was interviewed by an OIG investigator who took a buccal swab from her.

69. A.B. believes the swab was taken to compare it to possible fluid on the banana-shaped sex toy with which Lopez had raped her.

70. A.B. had reported the toy to investigators and told them its location.

71. Upon information on belief, Lopez and Hand remain employed by the Defendant at FCI Aliceville, where they continue to hold authority over and endanger the inmates.

### COUNT I –Defendant United States of America - FTCA: Negligence

72. A.B. re-alleges and incorporates by reference all of the preceding allegations of this Complaint.

73. Lopez sexually abused and otherwise touched A.B. on many occasions from October 2021 through December 2021.

74. Lopez's touching and rape of A.B. was intentional, was conducted in a harmful or offensive manner, occurred with sexual overtones, and was unwelcomed by A.B.

75. All of Lopez's acts and omissions were taken while acting under color of law and in the scope and course of his position as an employee at FCI Aliceville.

76. Hand directly observed Lopez isolating A.B. in the office on multiple occasions, and Hand knew or should have known that Lopez's behavior violated BOP policies including but not limited to Program Statements 3420.11 and 5324.12 and otherwise endangered A.B. by subjecting her to potential sexual assault, sexual abuse, harassment, and injury.

77. Despite his knowledge that Lopez was isolating A.B., Hand failed to stop or deter Lopez from continuing to isolate and assault A.B.

78. Despite his knowledge that Lopez was isolating A.B., Hand failed to report Lopez's conduct for further action or investigation.

79.  Defendant United States of America is responsible for the oversight and training of its employees, including Lopez, Hand, other officers and staff at federal correctional institutions, including FCI Aliceville.

80. Defendant United States of America owed a legal duty to A.B. and other inmates to ensure that Lopez and Hand were properly trained and supervised on all aspects of their employment, including compliance with Program Statement 3420.11 and Program Statement 5324.12.

81. Defendant United States of America owed a legal duty to A.B. and other inmates to prevent them from being subjected to sexual assault, sexual abuse, harassment, and injury by employees under its supervision including Lopez.

82. Pursuant to the Federal Tort Claims Act, the United States is liable for damages caused by the negligent or wrongful acts of its employees acting within the scope of their employment,

under circumstances where the United States, if a private person, would be liable in accordance with the laws of the State of Alabama.

83. Federal law specifically requires the BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and to "provide for the protection . . . of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3).

84. Defendant United States of America and the supervisors and employees of FCI Aliceville have a duty to provide inmates, being in their custody, with a safe and secure environment, free of dangers, including the dangers of sexual harassment and sexual assault.

85. As a premises owner/operator, the United States has a duty to provide inmates with a reasonably safe place, which specifically includes a place reasonably free and safe from known or suspected sexual abusers and/or individuals who pose a foreseeable risk of sexual abuse or rape.

86. Prison officials at FCI Aliceville have a non-discretionary duty, pursuant to PREA, to enforce a policy of "zero-tolerance" with respect to sexual abuse of inmates by staff.

87. Prison officials at FCI Aliceville have a duty to protect inmates from harm caused by other prison officials.

88. Prison officials at FCI Aliceville have a duty to disallow or sufficiently monitor and supervise one-on-one inmate/employee interactions.

89. Prison officials at FCI Aliceville have a duty to house inmates in a safe and secure manner.

90. Pursuant to 28 C.F.R. § 115.31, BOP and FCI Aliceville had a non-discretionary duty to train employees on how to prevent sexual abuse and sexual harassment, the right of inmates to be free from sexual abuse and harassment, the dynamics of sexual abuse and harassment, the

13

common reactions of sexual abuse and harassment victims, and how to detect and respond to signs of threatened and actual sexual abuse and to ensure that such training was properly followed. BOP and FCI Aliceville breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

91. BOP and FCI Aliceville had a non-discretionary duty to train employees and advise inmates of their right to be free from retaliation for reporting incidents of sexual harassment and sexual abuse by prison officials and to ensure that such training was properly followed. Plaintiff was retaliated against, and therefore BOP and FCI Aliceville breached this duty and such breach was a proximate cause of the injuries and damages alleged herein.

92. BOP supervisory officials have a duty to monitor, supervise, train, and discipline correctional staff at FCI Aliceville to ensure that correctional staff properly perform their PREA-mandated duties so that inmates' Eighth Amendment rights are not violated.

93. Hand and other prison officials and employees at FCI Aliceville knew or should have known that Lopez should not have been permitted to have unsupervised access to inmates, including A.B., to whom he posed an excessive and unreasonable risk.

94. Once Lopez began his sexual assaults of Plaintiff, Hand and other prison officials and employees at FCI Aliceville knew or should have known that it was occurring, but they failed to appropriately act to halt the assaults.

95. Through the conduct of Lopez, Hand, and other BOP employees, all of the duties encompassed by this count were breached, and as a proximate result Plaintiff sustained injuries and damages.

96. As a direct and proximate result of these breaches of duties, A.B. suffered personal injuries associated with and arising from multiple sexual assaults and battery including, but not

14

limited to, severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages, all or some of which shall continue indefinitely or permanently, as well as retaliation, and Defendant United States of America is consequently liable to Plaintiff for all of her compensatory damages recognized and allowable under applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Honorable Court grant her the following relief:

1. Compensatory damages as to all Counts;

2. Reasonable attorneys' fees and costs in accordance with applicable law; and,

3. Such other further relief as this Court in its discretion deems just.

**JURY DEMAND**

Plaintiff hereby demands a jury trial on any and all Counts so triable under applicable law.

**A.B.**
Plaintiff

*/s/Kathy Luker*
Kathy Luker, Esq. (ASB 2750-A63L)
P.O. Box 2261
Birmingham, AL 35201
P: (205) 251-6666
KathyL@LukerLawPC.com

15

*s/L. Dante diTrapano*
L. Danté diTrapano, Esq. (WVSB# 6778)
Calwell Luce diTrapano, PLLC
500 Randolph Street
Charleston, WV 25302
Telephone: 304-343-4323
Fax: 304-344-3684
dditrapano@cldlaw.com

*s/Charles F. Bellomy*
Charles F. Bellomy, Esq. (WSB# 9117)
Calwell Luce diTrapano,PLLC
500 Randolph Street
Charleston, WV 25302
Telephone: 304-343-4323
Fax: 304-344-3684
cbellomy@cldlaw.com

*s/ Amanda J. Davis*
Amanda J. Davis, Esq. (WSB# 9375)
Calwell Luce diTrapano, PLLC
500 Randolph Street
Charleston, WV 25302
Telephone: 304-343-4323
Fax: 304-344-3684
adavis@cldlaw.com

*s/ W. Jesse Forbes*
W. Jesse Forbes, Esq. (WV Bar No. 9956)
Forbes Law Offices PLLP
1118 Kanawha Blvd. East
Charleston, WV 25301
Telephone: 304-343-4050
Fax: 304-343-7450

16