IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **A.B.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:23-cv-01691-RDP |
| } | |
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Defendant.** } | |
| } | |

### MEMORANDUM OPINION

This matter is before the court on Defendant the United States' Motion to Dismiss. (Doc. #13). The Motion has been fully briefed and is ripe for decision. (Docs. # 13, 16, 17, 23, 24, 26, 27). For the reasons discussed below, the Motion is due to be granted in part and denied in part.

Plaintiff A.B. brings this action under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. In her Complaint, A.B. alleges she was sexually assaulted while incarcerated at Federal Correction Institution Aliceville ("FCI Aliceville") and that the negligent conduct of multiple Bureau of Prisons ("BOP") employees surrounding the alleged assault supply grounds for asserting that the United States is liable under the FTCA. (Doc. # 1).

Defendant's Motion argues that Plaintiff's Complaint should be dismissed because the court lacks subject matter jurisdiction over Plaintiff's claim under Federal Rules of Civil Procedure 12(b)(1). The Motion presents a facial challenge to subject matter jurisdiction because, Defendant argues, Plaintiff has not sufficiently alleged a basis for subject matter jurisdiction. (*Id*. at 2-4).

1

I.  **Background**

In evaluating a motion to dismiss, this court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). The following facts are taken from the allegations contained in A.B.'s Complaint, and the court makes no ruling on their veracity. These are the "facts" only for the purpose of evaluating the government's motion to dismiss.

While incarcerated at FCI Aliceville, A.B. worked in food services. (Doc. # 1 ¶¶ 1, 39). During the relevant period, BOP employed Benjamin C. Hand ("Hand") and Jorge Lopez ("Lopez") in food service positions. (*Id*. ¶ 11). Hand was a Food Service Administrator, overseeing inmate and non-inmate food service staff. (*Id*. ¶ 12). Lopez was an Assistant Food Service Administrator, overseeing inmate food service staff. (*Id*.). Hand directly supervised Lopez and the two shared an office. (*Id*. ¶ 41).

Each week, A.B. worked from Sunday through Thursday under the direct supervision of Lopez. (*Id*. ¶¶ 39-40). Beginning in the middle of October 2021, Lopez began making sexual comments to A.B. during her work shifts. (*Id*. ¶ 47). After about one week, Lopez isolated A.B. in the office he shared with Hand and sexually assaulted A.B. (*Id*. ¶ 48). Thereafter, the isolation and sexual assault in Lopez's office occurred on a "nearly daily basis." (*Id*. ¶ 42). On at least two occasions, Hand witnessed Lopez isolating A.B. in their shared office. (*Id*. ¶ 44).

Lopez continued to sexually abuse A.B. until another inmate reported the sexual assaults in late December 2021. (*Id*. ¶ 54). A.B. was immediately moved to the Segregated Housing Unit ("SHU") where she stayed for forty-six days. (*Id*. ¶¶ 55, 58). While in SHU, A.B.'s personal belongings were confiscated, she was denied feminine sanitary products, and her access to

amenities was limited. (*Id*. ¶¶ 58, 63-65). A.B.'s confinement in SHU was not reviewed by BOP pursuant to their internal policy requirements, and the reported sexual assault of A.B. was not formally investigated until forty-five days after the report was filed. (*Id*. ¶¶ 60, 67). A.B. was released from SHU on February 8, 2022, and was subsequently transferred to a different BOP facility. (*Id*. ¶ 66).

On December 13, 2023, A.B. filed this lawsuit. (*Id*.). A.B.'s single-count complaint alleges multiple instances of negligence by BOP employees and argues that each instance individually gives rise to liability for the United States. More specifically, the Complaint alleges the United States is liable for:

- Lopez's sexual abuse of A.B. (*id*. ¶ 73-75);
- Hand's failure to stop Lopez from isolating and sexually abusing A.B. (*id*. ¶ 77);
- Hand's failure to report Lopez isolating A.B. (*id*. ¶ 78);
- BOP's inadequate training and supervision of Hand and Lopez (*id*. ¶ 80);
- BOP's failure to protect A.B. (*id*. ¶ 81);
- BOP's housing A.B. in the SHU for 46 days (*id*. ¶ 58);
- BOP's limiting A.B.'s "access to programs, privileges, education, and work" while she was housed in the SHU (*id*. ¶ 63);
- BOP's confiscating A.B.'s personal belongings and denying her sanitary products while she was housed in the SHU (*id*. ¶¶ 64-65);
- BOP's failure to formally review A.B.'s confinement in the SHU (*id*. ¶ 60); and
- BOP's failure to immediately begin a formal investigation into the report of A.B.'s sexual assault. (*Id*. ¶ 67).

As a result of these tortious-conduct allegations, A.B. alleges that she "suffered personal injuries associated with and arising from multiple sexual assaults and battery including, but not limited to, severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages." (*Id*. ¶ 96).

## II.     Standard of Review

Under Rule 12(b)(1), a district court must dismiss a suit when the court does not have subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)). Upon a defendant's factual attack, the court must determine "the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) (internal citation omitted). But upon a defendant's facial challenge, the court merely assesses whether, taking all the allegations as true, the complaint "sufficiently alleged a basis of subject matter jurisdiction." *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Here, the United States' Motion asserts a facial challenge.  The United States contends that Plaintiff has not sufficiently alleged that the court has subject matter jurisdiction over her FTCA claims because her factual allegations relate to criminal conduct that is outside the line and scope of federal employment. (Doc. # 13 at 4).

**III.     Analysis**

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal citations omitted). Under the FTCA, the United States expressly consents to be sued in only narrow circumstances. *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015). Namely, the Act provides:

> district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). As defined by § 1346(b)(1), it is a "necessary predicate to subject matter jurisdiction" under the FTCA that the allegedly tortious conduct was within the scope of employment, *Lawrence*, 919 F.2d at 1528, and that "analogous state-law duties [] would impose liability on private parties for similar conduct." *Smith v. United States*, 14 F.4th 1228, 1234 (11th Cir. 2021). But, even if a claim satisfies the § 1346(b)(1) requirements, the FTCA explicitly retains sovereign immunity over certain types of claims. *See, e.g.*, 28 U.S.C. §§ 2860(a), (h).

In her Complaint, A.B. alleges that "the conduct of Lopez, Hand, and other BOP employees" – sexually abusing; not reporting; not intervening; inadequately training and supervising; failing to protect inmates; improper housing; failing to review housing; and failing to timely investigate the sexual abuse report – breached "all of the duties encompassed by this count . . . and as a proximate result Plaintiff sustained injuries and damages." (Doc. # 1 ¶ 95).

For the reasons discussed below, the court finds that the FTCA does not waive sovereign immunity for claims based on Lopez's conduct because that conduct was outside the scope of his employment. Further, the FTCA does not waive sovereign immunity for claims based on Hand's

conduct because it was protected by the discretionary function exception. Finally, the FTCA does not waive sovereign immunity for claims based on BOP's training, supervising, protecting, or housing decisions because they were protected by the discretionary function exception. However, based on the pleadings currently before it, the court finds that the FTCA may waive sovereign immunity for claims based on BOP's alleged failure to properly review A.B.'s housing or investigate the report of A.B.'s sexual assault.

### A. Scope of Employment

The FTCA only waives sovereign immunity for allegedly tortious conduct that was "within the scope of employment." 28 U.S.C. § 1346(b)(1). To determine whether a challenged action is within the scope of employment, courts turn to the law of the state where the allegedly tortious conduct occurred. *Flohr v. Mackovjack*, 84 F.3d 386, 390 (11th Cir. 1996). To determine the scope of employment in Alabama, "the dispositive question is whether the employee was engaged in an act he was hired to perform or in conduct that conferred a benefit on his employer." *Hulbert v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 22, 24 (Ala. 1998). Any conduct "impelled by motives that are wholly personal, or to gratify [personal] feelings or resentment" are not within the scope of employment even if they occur or are made possible by a given employment status. *Solmica of Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 642-43 (Ala. 1970). Applying these legal principles, Alabama courts have expressly found sexual misconduct is not within the line and scope of employment because it is "purely personal," *Doe v. Swift*, 570 So. 2d 1209, 1211 (Ala. 1990), and "not undertaken to further [an employer's] business." *East Ala. Behav. Med., P.C. v. Chancey*, 883 So. 2d 162, 167 (Ala. 2003).

### 1.      Lopez's Conduct Was Outside the Scope of His Employment

In this suit, A.B. seeks to hold the United States liable for "Lopez sexually abus[ing] and otherwise touch[ing] A.B. on many occasions." (Doc. # 1 ¶ 73). But this conduct – sexual abuse and inappropriate touching – is not within the scope of Lopez's employment. As Assistant Food Service Administrator, Lopez managed inmates, like A.B., who worked in food service positions in the prison. Quite obviously, no part of this position required him to isolate and sexually assault A.B. Lopez's sexual misconduct was not attached in any way to his position and duties as a prison employee. Rather, these actions were for his own personal gratification and wholly unconnected from the enterprise of a federal prison. Such sexual misconduct was not within the line and scope of Lopez's employment because it was purely personal to him. *Doe*, 570 So.2d at 1211. Thus, under Alabama law, Lopez's allegedly tortious conduct was outside of the scope of his employment and § 1346(b)(1) of the FTCA does not waive sovereign immunity from a suit based on Lopez's conduct.

### B.      Discretionary Function Exception

Under the FTCA, even if § 1346(b)(1)'s requirements are met, Congress has explicitly upheld the Government's sovereign immunity from "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This discretionary function exception "serves to preserve sovereign immunity for any claim that is based on a federal agency or employee's performance or nonperformance of a discretionary task, even if, in so acting, the agency employee may have abused his discretion." *Zelaya*, 781 F.3d at 1329. This exception is intended "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and

political policy," *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (internal quotations omitted), and thus "insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 539 (1988). The Supreme Court has developed a two-step test to implement the exception; if both steps are satisfied, the discretionary function exception applies, and sovereign immunity is not waived. *See id*. at 536.

First, the challenged conduct must "involve[] an element of judgment or choice." *Id*. Generally, government employees' conduct involves some judgment or choice. *See, e.g.*, *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1162 (11th Cir. 2020) (holding that the first step of the discretionary function test is satisfied when no regulation mandated specific conduct in the situation). The only exception is when a "federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard." *Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir. 1993). However, even if a regulation applies, a government employee's conduct still involves judgment if the regulation affords the employee discretion in its implementation. *See United States v. Varig Airlines*, 467 U.S. 797, 820 (1984) (finding Federal Aviation Administration employees' decisions in implementing a regulation were discretionary because the regulation "specifically empowered [the employees] to make policy judgments"); *see also Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998) (finding government conduct involved exercising judgment because relevant "statutory provisions [did] not mandate a specific, non-discretionary course of conduct for the [government agency] to follow.").

Second, if the challenged conduct involves judgment, it must be "of the kind that the discretionary function exception was designed to shield," *Berkovitz*, 486 U.S. at 536; that is, decisions "susceptible to policy analysis." *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir.

8

1997) (quotation omitted) (finding a post office's decisions regarding security on its premises were "susceptible to policy analysis"). "[I]n examining whether an employee's discretion is of the type grounded in public policy, one uses an objective test, and the employee's subjective intent is irrelevant." *Zelaya*, 781 F.3d at 1330. A decision is grounded in policy when it contributes to a larger policy concern and requires balancing multiple policy considerations. *See Cohen*, 151 F.3d at 1344 ("Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons."); *see also Cranford v. United States*, 466 F.3d 955, 960 (11th Cir. 2006) (finding the Coast Guard's decision regarding marking a wrecked ship was protected by the discretionary function exception because it required balancing a plethora of policy considerations). In contrast, a decision is not grounded in policy when it does not contribute to a larger policy concern or does not require balancing policy considerations. *See Gaubert*, 499 U.S. at 325 n.7 (suggesting that a government official negligently driving while on the job would not be protected by the discretionary function exception because "[a]lthough driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy."); *see also Swafford v. United States*, 839 F.3d 1365, 1372 (11th Cir. 2016) (holding that "choosing to accept a dangerously unsafe stairway is simply not a permissible exercise of discretion").

Without deciding whether the respective conduct satisfies § 1346(b)(1), the court below assesses whether Hand's and BOP's allegedly tortious conduct falls within the discretionary function exception.

1.     **Plaintiff Has Not Sufficiently Alleged that Hand's Decision to Not Report Lopez Was a Permissible Exercise of Discretion**

A.B. argues that the United States should be liable for Hand's decision to not "report Lopez's conduct." (Doc. # 1 ¶ 78). Specifically, Hand observed, but did not report, Lopez "isolating" A.B. (*Id*. ¶¶ 44-46). The court cannot say, based on this allegation as currently pleaded, that the discretionary function exception does not shield the United States from liability for this conduct.

The Complaint cites BOP Program Statement 5324.12, § 115.61, which requires that "all staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment." (*Id*. ¶ 24). Similarly, Program Statement 3420.11 requires employees to "report . . . any violation, appearance of a violation, or attempted violation of the[] Standards." (*Id*. ¶ 16). One such Standard is the prohibition against an employee "engag[ing] in, or allow[ing] another person to engage in, sexual behavior with an inmate." (*Id*. ¶ 17). But, as currently pleaded, A.B.'s averments do not plausibly allege that Hand failed to report Lopez for cornering A.B. so he could assault her.

A.B. extensively cites *L.C. v. United States*, in which the Sixth Circuit found these same Program Statements *did* create a non-discretionary duty. 83 F.4th 534, 548 (6th Cir. 2023). This court is not bound by the Sixth Circuit's decision in *L.C.* Moreover, as currently pleaded, this case is distinguishable from *L.C.* In *L.C.*, the complaint alleged "BOP personnel . . . knew or should have known of [the abusive employee's] propensity for sexual misconduct involving inmates." *Id*. at 540. The Sixth Circuit found that, if that allegation was true, the BOP personnel had a non-discretionary duty to report the abusive employee. *Id*. at 548. In contrast, here, A.B. only alleges Hand saw Lopez isolate A.B. Unlike in *L.C.*, where there was allegedly knowledge of sexual misconduct, Plaintiff has not alleged that Hand had knowledge of sexual misconduct. Her

10

allegations suggest that Hand only knew that Lopez isolated A.B., which in and of itself does not appear to have violated any prison rules. Again, the Complaint does not allege either that Hand witnessed Lopez sexually assaulting A.B. or that isolating an inmate was a violation of the rules. The Program Statements mandate reporting a "possible incident of" or "appearance" of sexual abuse. But here, there is no allegation that indicates Hand knew or should have known that there was sexual abuse of A.B. by Lopez.

Defendant's Motion to Dismiss this claim as currently pleaded is due to be granted. However, the court will allow A.B. the opportunity to replead this claim if she believes there are sufficient facts she can allege that plausibly point to a violation of a duty.

### 2. Hand's Decision to Not Intervene Was a Permissible Exercise of Discretion

A.B. argues that the United States should be liable for Hand's failure to "stop or deter Lopez from continuing to isolate and assault A.B." (Doc. # 1 ¶ 77). In the Complaint, A.B. alleges Hand witnessed Lopez isolating her in Hand and Lopez's shared office and did not stop Lopez. (*Id.* ¶ 76).

Again, this case would be different if A.B. had plausibly alleged that Hand witnessed Lopez sexually assaulting A.B. or had reason to suspect that he was doing so. But, the Complaint as currently pleaded only alleges that Hand saw Lopez alone in the office with A.B.

Defendant's Motion to Dismiss this claim as currently pleaded is due to be granted. However, the court will allow A.B. the opportunity to replead this claim if she believes there are sufficient facts she can allege that plausibly point to a violation of a duty.

### 3. Bureau of Prisons' Training and Supervision Decisions Were Permissible Exercises of Discretion

A.B. argues that the United States can be held liable for the BOP's failure to "properly train[] and supervise[]" Lopez and Hand. (Doc. # 1 at ¶ 80).[1] The discretionary function exception shields the United States from liability for this conduct because deciding how to supervise and train employees involves discretion that the discretionary function exception was designed to protect.

First, decisions regarding the training and supervision of BOP employees are exercises of discretion. The Complaint does not cite any statute or regulation that mandates specific steps that must be taken by the BOP in the training or supervision of prison employees. Just as in *Foster Logging, Inc.*, the lack of governing statutes or regulations suggests training and supervisory decisions were discretionary. *See* 973 F.3d at 1162.

Second, training and supervisory decisions are the type of decision the discretionary function exception was designed to protect. Finding the "discretionary function encompasses government decisions about how and how much to supervise the safety procedures of independent contractors," the Eleventh Circuit suggested "decisions regarding the exercise of supervisory authority are of the sort the discretionary function exception was designed to encompass." *Andrews v. United States*, 121 F.3d 1430, 1440-41 (11th Cir. 1997). Here, the BOP's decisions about how to train its employees were "susceptible to policy analysis," *Hughes*, 110 F.3d at 768, such as balancing the most effective level of oversight and training against the demands of maintaining safety in the prison.

---

[1] The court notes that the Complaint only alleges that BOP owed A.B. a duty to train and supervise the prison employees. It does not allege specific BOP conduct that breached this duty. (Doc. # 1 ¶ 80).

Because the BOP's decisions about how to train and supervise prison employees were an exercise of discretion and were susceptible to policy analysis, the discretionary function exception protects the United States from suit based on those decisions.

4.  **Bureau of Prisons's Decisions in Protecting Inmates Were Permissible Exercises of Discretion**

A.B. argues the United States can be held liable for the BOP's failure to protect A.B. from sexual assault. (Doc. # 1 ¶ 81).[2] The discretionary function exception shields the United States from liability for this conduct because it involves the exercise of discretion the exception was designed to protect.

First, decisions regarding inmate safety are exercises of discretion. The Complaint cites a federal regulation that requires BOP to "provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" including by providing for their "protection." (*Id*. ¶ 83 (quoting 18 U.S.C. §§ 4042(a)(2), (3))). While this regulation imposes a duty on BOP to protect inmates, it does not provide "a fixed or readily ascertainable standard," meaning the regulation affords BOP discretion in how to protect inmates. *Autery*, 992 F.2d at 1529; *see also Cohen*, 151 F.3d at 1342 (finding that under § 4042 "the BOP retains sufficient discretion in the means it may use to fulfill [the duty to protect] to trigger the discretionary function exception").

Second, decisions regarding inmate safety are the type of decision the discretionary function exception was designed to protect. Discussing due process claims, the Supreme Court noted "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging

---

[2] Once again, the Complaint merely alleges that the BOP owed A.B. a duty to "A.B. and other inmates to prevent them from being subjected to sexual assault, sexual abuse, harassment, and injury by employees under its supervision," but it fails to allege specific BOP conduct that breached this duty. (Doc. # 1 ¶ 81).

13

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Similarly, here, the BOP's decisions as to policies and protocols to protect inmates were subject to economic and social policy considerations.

Because protecting inmates is an exercise of the type of discretion the discretionary function exception was designed to protect, the United States is shielded from liability based on BOP's alleged failure to protect A.B.

### 5. Bureau of Prisons's Housing Decisions Related to A.B. After the Report of Her Sexual Assault Were Permissible Exercises of Discretion

A.B. argues that the United States can be held liable for the BOP's decisions regarding her housing after the report of her sexual assault. (Doc. # 1 ¶¶ 55-68). Specifically, A.B. alleges she was left in the SHU for 46 days, rather than the recommended 30 days (*id*. ¶¶ 57-58); that she was denied access to "programs, privileges, education, and work" while in the SHU (*id*. ¶¶ 62-63); that her personal belongings were confiscated; and that she was denied sanitary products while in the SHU. (*Id*. ¶¶ 64-65). The discretionary function exception shields the United States from liability for these decisions because they were permissible exercises of discretion.

First, the BOP's decisions regarding A.B.'s housing were exercises of discretion. A regulation removes the discretionary nature of a government employee's conduct if it mandates specific conduct. *Autery*, 992 F.2d at 1529. Here, the Complaint cites BOP policy that provides victims of sexual assault shall be moved to SHU for a period that "shall not ordinarily exceed a period of 30 days." (Doc. # 1 ¶ 57). This policy preserves a realm of discretion because it explicitly acknowledges the time limit "ordinarily" applies, implying that in some situations an inmate may remain in SHU for longer than 30 days. The complaint further cites BOP policy that "mandates [] access to programs, privileges, education or work are not to be interrupted, to the extent possible"

when an inmate is in the SHU. (*Id*. ¶ 62). This policy maintains BOP discretion because the phrase "to the extent possible" affords discretion to limit an inmate's access to programs in some situations. Finally, the BOP's decisions regarding personal belongings and sanitary products were discretionary because the Complaint does not cite any regulations that mandated specific conduct. *See Foster Logging, Inc.*, 973 F.3d at 1162.

Second, these housing decisions were subject to policy considerations. These decisions require balancing inmates' safety against limited housing, staffing, and resources, which are "grounded in social, economic, and political policy" that the discretionary function exception was designed to protect. *Gaubert*, 499 U.S. at 323.

Because housing decisions are discretionary and susceptible to policy considerations, the discretionary function exception shields the United States from liability for those decisions.

### 6. Bureau of Prisons's Failure to Review and Failure to Timely Investigate A.B.'s Sexual Assault Were Not Permissible Exercises of Discretion

Finally, A.B. argues that the United States should be liable for BOP's failure to review and timely investigate her sexual assault. (Doc. # 1 ¶¶ 59-61, 67). Specifically, A.B. alleges BOP failed to review her being placed in SHU (*id*. ¶ 60) and did not begin a formal investigation of her sexual assault until 45 days after the initial report was made. (*Id*. ¶ 67). The discretionary function exception does not shield the United States from liability for these decisions because a review of the applicable regulations shows they mandate specific conduct.

BOP's decisions regarding a formal investigation of A.B.'s sexual assault and reviewing A.B.'s housing were not discretionary. The Complaint cites BOP policies that require "immediate investigation" of reports of sexual assault (*id*. ¶ 30) and formal review of an inmate being placed in SHU after 72 hours and afterwards at 30-day intervals. (*Id*. ¶ 60). Unlike the other BOP policies discussed, these policies "prescribe[] a course of action embodying a fixed or readily ascertainable

15

standard," *Autery*, 992 F.2d at 1529, and do not afford discretion in how to implement the regulation. Because these policies mandated specific conduct, BOP officials did not have discretion to leave A.B.'s housing situation unreviewed. Nor did BOP have the discretion to decline to immediately begin a formal investigation of the sexual assault report. Thus, the discretionary function exception does not apply to these claims. *See Cohen*, 151 F.3d at 1344-45 (writing that when a government employee violates an internal guideline's mandatory requirement "there will be no shelter from liability because there is no room for choice and the action will be contrary to policy") (quoting *Gaubert*, 499 U.S. at 324).

Because BOP policy mandated specific conduct – reviewing segregated housing and immediately investigating reports of sexual assaults – the discretionary function does not protect the United States from liability for BOP officials' failure to follow the policies' mandatory requirements.

### C.    The Need for Additional Briefing

"Federal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020) (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). Although the § 2680(a) discretionary function exception does not retain sovereign immunity over the failure to review and failure to investigate claims, there are two additional (unbriefed) issues that could affect sovereign immunity. Because sovereign immunity under the FTCA is a jurisdictional issue, *see* 28 U.S.C. § 1346(b)(1), the court will order additional briefing on these potential issues: (1) whether § 1346(b)(1) waives sovereign immunity for claims based on a violation of BOP policy, and (2) whether the § 2680(h) intentional tort exception retains sovereign immunity over such claims.

Under § 1346(b)(1), sovereign immunity is only waived for conduct that was within the scope of employment, *Lawrence*, 919 F.2d at 1528, and for which a private party would be liable under state law. *Smith*, 14 F.4th at 1234. Whether conduct was within the scope of employment is assessed under the laws of the state in which the allegedly tortious conduct occurred. *Flohr*, 84 F.3d at 390. To determine whether a private party would be liable for similar conduct, courts draw comparisons to analogous state law duties. *See Howell v. United States*, 932 F.2d 915 (11th Cir. 1991). Such a comparison can lead to government liability for the execution of a uniquely government function, *see, e.g.*, *Indian Towing Co. v. United States*, 350 U.S. 61, 68-69 (1955), but it cannot lead to government liability for "breaches of federal statutory or regulatory duties that do not apply to private parties." *Smith*, 14 F.4th at 1232. Here, the Complaint alleges that the United States is liable for BOP's failure to investigate A.B.'s housing (Doc. # 1 ¶¶ 59-61), and to immediately begin a formal investigation of the sexual assault report. (*Id.* ¶ 67). It is unclear whether private parties would be liable under similar circumstances or whether A.B. is merely seeking to enforce "federal statutory or regulatory duties that do not apply to private parties." *Smith*, 14 F.4th at 1232.

But even if the § 1346(b)(1) requirements are met for a claim based on BOP's failure to review A.B.'s housing and to immediately investigate the sexual assault report, § 2680(h) may preserve sovereign immunity over such claims. Specifically, § 2680(h) retains sovereign immunity over claims that "aris[e] out of assault, battery," and other intentional torts. 28 U.S.C. § 2680(h). This exception bars claims "based *entirely* on an assault or battery" but, "in at least some situations," does not bar claims for "an injury [that] was directly caused by an assault or battery" when "the Government [] negligently allow[ed] the assault to occur." *Sheridan v. United States*, 487 U.S. 392, 398 (1988) (emphasis in original). Here, the Complaint alleges "A.B. suffered

17

personal injuries associated with and arising from multiple sexual assaults and battery." (Doc. # 1 ¶ 96). Because A.B.'s alleged injuries arose out of sexual assault and battery, it is unclear whether the § 2680(h) exception retains sovereign immunity over claims based on BOP's failure to review A.B.'s housing or to immediately investigate the sexual assault report.

**IV.     Conclusion**

For the reasons discussed above, the United States's motion to dismiss is due to be granted in part and denied in part. The Motion is granted as any claim based on Lopez's conduct and BOP's training and supervision of employees, general protection of inmates, and housing assignments for A.B. after her sexual assault. The Motion is also granted as to claims based on Hand's failure to report or intervene; nevertheless, Plaintiff is granted leave to amend these claims. The Motion is denied as to a claim based on BOP's failure to review A.B. being placed in the SHU and/or BOP's failure to immediately begin a formal investigation into A.B.'s assault.

However, because of the two unbriefed issues discussed above that may affect sovereign immunity over the remaining claims, the court will order additional submissions on those provisions before setting a deadline for Plaintiff to amend her Complaint.

An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this March 4, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE