# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **A.B.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:23-CV-1691-RDP** |
| | } | |
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Certain Claims. (Doc. # 53). The Motion has been fully briefed (Docs. # 56, 57), and is ripe for decision. For the reasons explained below, the Motion is due to be denied.

## I.    Background

Plaintiff filed her original Complaint in this action on December 13, 2023, asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. (Doc. # 1). On April 22, 2024, Defendant moved to dismiss the Complaint. (Doc. # 13). On March 4, 2025, the court granted the Motion in part and denied it in part. (Docs. # 29, 30). In that order, the court ordered the parties to submit briefing regarding whether the United States retains sovereign immunity under 28 U.S.C. §§ 1345(b)(1) and/or 2860(h). (Doc. # 30).

On May 1, 2025, the court conducted a status conference at which discovery and an amended complaint were discussed. On May 14, 2025, a scheduling conference was held, and on

May 21, 2025, the court entered a scheduling order setting a deadline of August 25, 2025 for Plaintiff to amend the pleadings. (Doc. # 40).

On August 25, 2025, Plaintiff filed a Motion for Leave to File Amended Complaint. (Doc. # 48). Plaintiff attached a copy of the proposed Amended Complaint to the Motion. (Doc. # 48-1). On August 26, 2025, the court granted the motion for leave to amend. (Doc. # 49).

## II.    Plaintiff's Allegations

Plaintiff was an inmate at Defendant's FCI Aliceville. (Doc. # 50 ¶¶ 8-9).

During the relevant time period, October through December 2021, Defendant employed Benjamin C. Hand, a Food Service Administrator, and Jorge Lopez, an Assistant Food Service Administrator, at FCI Aliceville. (*Id*. at ¶ 11). Lopez was responsible for, among other things, supervising inmates assigned to work in food service at FCI Aliceville, such as Plaintiff. (*Id*. at ¶ 12). Hand and Lopez worked the same schedule. (*Id*. at ¶ 13).

A minimum of five Cook Supervisors were on duty during each shift that Plaintiff worked. (*Id*. at ¶ 15). Shannon Colvin was one of the Cook Supervisors. (*Id*. at ¶ 14). Among the duties assigned to Cook Supervisors were supervising inmates assigned to work in food service. (*Id*.). Hand was responsible for supervising Lopez, the Cook Supervisors, and the inmates assigned to work in food service. (*Id*. at ¶ 16). At least periodically, Lopez, Hand, Colvin, and the other Cook Supervisors should have received training and continuing education on the supervision of female offenders and policies prohibiting sexual abuse of inmates. (*Id*. at ¶ 18).

The Bureau of Prisons' policies are contained in documents called "Program Statements." The Program Statements contain rules and procedures that all BOP employees are required to follow. (*Id*. at ¶ 19).

BOP Program Statement 3420.11 mandates that: "An employee shall not engage in, or allow another person to engage in, sexual behavior with an inmate." (*Id*. at ¶ 21). That Statement required that "[a]s soon as practicable (but no later than 24 hours) [Employees must] report to their CEO (or other appropriate authority . . . any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation." (*Id*. at ¶ 20). The Statement provided that "[a]ll allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution." (*Id*. at ¶ 24). Each new BOP employee, contractor, and volunteer must receive and sign a form acknowledging receipt of Program Statement 3420.11. (*Id*. at ¶ 25).

BOP Program Statement 5324.12 addresses the prevention of, and intervention upon, sexually abusive behavior. (*Id*. at ¶ 27). The Statement lays out duties and responsibilities with respect to conduct for all BOP employees, and mandates reporting duties with respect to sexually abusive behavior, including concerning incidents or even possible incidents of sexual abuse or sexual harassment. (*Id*. at ¶ 28). It required BOP officials to take certain steps "to protect inmates against sexual abuse," including the use of "video monitoring," requiring employees to timely report and investigate any information regarding sexual assault. (*Id*. at ¶ 29-30).

Program Statement 5234.12, § 115.13, directed employees "[t]o protect inmates against sexual abuse." (*Id*. at ¶ 31). One of the ways the National PREA[1] Resource Center recommends a prison can achieve this is "by limiting the possibility that inmates and staff will be left alone and unmonitored through adequate and ongoing supervision." (*Id*. at ¶ 32).

---

[1] The Prison Rape Elimination Act (PREA) was bipartisan legislation passed in 2003. The purpose of the act is to "provide for the analysis of the incidence and effects of prison rape in federal, state, and local institutions and to provide information, resources, recommendations and funding to protect individuals from prison rape." https://www.prearesourcecenter.org/about/prison-rape-elimination-act (last visited March 30, 2026).

BOP Program Statement 5324.12, § 115.61 requires that "[a]ll staff must report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or, where appropriate, in accordance with the Program Statement [3420.11,] Standards of Employee Conduct." (*Id*. at ¶ 34).

BOP Program Statement 5324.12, § 115.71 provides a reporting chain following sexual abuse allegations and requires reporting of sexual abuse incidents no later than 24 hours and the immediate investigation of reports. (*Id*. at ¶¶ 37, 40). It requires that the investigation be "documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings" and further requires that the investigation "include an effort to determine whether staff actions or failures to act contributed to the abuse."  (*Id*. at ¶¶ 38-39).

BOP Program Statement 5324.12 implements a zero tolerance policy toward all forms of sexual activity, specifically including "Staff perpetrator against inmate victim." (*Id*. at ¶ 41). BOP Program Statement 5324.12, § 115.61(a) quotes 28 C.F.R. § 115.61's requirement that the BOP "shall require all staff to report immediately and according to [BOP] policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the [BOP]; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." (*Id*. at ¶ 42).

BOP policy requires the training of all employees who may have contact with inmates about how to fulfill their responsibilities under the Program Statements. (*Id*. at ¶ 43).

Plaintiff was an inmate at FCI Aliceville assigned to work under Lopez's direct supervision. (*Id*. at ¶ 47). On or around October 15, 2021, Lopez began making overt sexual

comments to Plaintiff while she worked her shifts in food service. (*Id*. at ¶ 49). Within approximately one week, Lopez instructed Plaintiff to follow him to his office where he physically groped her, forced his hands into her pants and shirt, and used his fingers to repeatedly and forcefully penetrate her. (*Id*. at ¶ 50). Starting at the end of November 2021, Lopez isolated Plaintiff in his office and raped her, and thereafter he and assaulted and raped her on a nearly daily basis. (*Id*. at ¶ 51-52). Lopez's office was across the hallway from his supervisor Hand's office, and Hand's office had a window into the hallway from which the door to Lopez's office was visible. (*Id*. at ¶¶ 56-57). On at least two occasions, Hand entered Lopez's office and discovered Lopez and Plaintiff alone in the office. (*Id*. at ¶ 59). Hand knew or should have known Lopez having Plaintiff alone in his office was in violation of BOP Program Statement 5324.12, yet Hand did not report Lopez's conduct. (*Id*. at ¶¶ 60-61).

On Thanksgiving Day in November 2021, Cook Supervisor Colvin witnessed Plaintiff alone with Lopez in his office, but did not report the incident. (*Id*. at ¶ 62).

On December 23, 2021, a fellow inmate witnessed Lopez sexual assaulting Plaintiff in his office and reported that incident to Cook Supervisor Mia Gracia Gipson. (*Id*. at ¶ 63). Gipson reported Lopez's sexual assault of Plaintiff on December 24, 2021. (*Id*. at ¶ 64).

Following Gipson's report of Lopez's sexual assault on Plaintiff, Warden Garrett and Captain Moseby interrogated Plaintiff and repeatedly asked whether she was the "perpetrator" of the sexual abuse. (*Id*. at ¶ 65). Plaintiff was immediately placed in the Segregate Housing Unit (SHU), where she remained until February 8, 2022. (*Id*. at ¶ 66). Pursuant to BOP Policy Statement 5324.06, § 115.43, a facility that assigns an inmate who has been sexually assaulted to involuntary segregated housing should only do so until an alternative means of separation from likely abusers

5

can be arranged, which ordinarily should not exceed a period of 30 days. (*Id.* at ¶ 68). Plaintiff was housed in SHU for 46 days. (*Id.* at ¶ 69).

In cases where an involuntary segregated housing assignment is made for the safety of an inmate who has been sexually abused or assaulted, BOP Policy Statement 5324.06, § 115.43, requires clear documentation of: (1) the basis for the facility's concern for the inmate's safety; and (2) the reason why no alternative means of separation can be arranged. (*Id.* at ¶ 70). No explanation was provided for Plaintiff's extended confinement in SHU. (*Id.* at ¶¶ 71-72). While Plaintiff was in SHU, BOP failed to ensure that her access to programs, privileges, education and work were not interrupted in violation of BOP Policy Statement 5324.06, § 115.43. (*Id.* at ¶¶ 73-74). BOP also refused Plaintiff feminine sanitary products for her menstrual period and confiscated all of her personal belongings. (*Id.* at ¶¶ 75-76). When Plaintiff was released from SHU, she was transferred to FCI Tallahassee. (*Id.* at ¶¶ 77-78).

Cook Supervisor Gipson's report of Lopez's sexual assault on Plaintiff was referred to OIG for investigation on December 28, 2021, but a local investigation was not authorized until March 4, 2022, and the investigation was not concluded until June 6, 2023. (*Id.* at ¶ 79). During the investigation, OIG did not interview BOP employees Hand (Lopez's direct supervisor with an office across the hall), Gipson, or any Cook Supervisors other than Colvin. (*Id.* at ¶¶ 81-82). And, although there was at least one video camera that monitored the hallway directly outside of Lopez's office, OIG did not interview any of the Correctional Officers who were responsible for monitoring the activity captured by that video camera. (*Id.* at ¶ 83).

III.    **Legal Standard**

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

Under Rule 12(b)(1), a district court must dismiss a suit when the court does not have subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)). Upon a defendant's factual attack, the court must determine "the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) (internal citation omitted). But upon a defendant's facial challenge, the court merely assesses whether, taking all the allegations as true, the complaint "sufficiently alleged a basis of subject matter jurisdiction." *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Here, the United States' Motion asserts a facial challenge.  The United States contends that Plaintiff has not sufficiently alleged that the court has subject matter jurisdiction over her FTCA claims because her factual allegations relate to criminal conduct that is outside the line and scope of federal employment. (Doc. # 13 at 4).

Defendant also moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserting that the Amended Complaint fails to state a claim. To survive a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

## IV.    Analysis

Plaintiff's Amended Complaint assert three negligence claims against Defendant under the Federal Tort Claims Act ("FTCA"). The court reviews each one, in turn.

### A.    Plaintiff's Claims

Count I asserts that Defendant endangered Plaintiff and subjected her to potential sexual assault or abuse by failing to stop or deter Lopez from continuing to isolate and assault Plaintiff (despite knowledge that he was isolating Plaintiff in his office), and by failing to report Lopez's conduct in violation of multiple BOP Program Statements. As a result of these breaches, Plaintiff alleges she suffered multiple sexual assaults and severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages. (Doc. # 50 at ¶¶ 86-114).

Count II asserts that Defendant breached its non-discretionary duty under federal and state law, and BOP Policy Statement 5234.12, § 115.71 to protect persons in its custody and conduct a prompt, thorough, objective, and adequate investigation of reported sexual abuse and to determine whether staff actions or failures to act contributed to the abuse. As a result of these breaches, Plaintiff alleges she suffered multiple sexual assaults and severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages. (Doc. # 50 at ¶¶ 115-127).

Count III asserts that Defendant breached BOP Policy Statement 5324.06, § 115.43 by placing Plaintiff in a Segregate Housing Unit (SHU) for more than thirty days following Cook Supervisor Gipson's report of Lopez's sexual assault on Plaintiff. Plaintiff alleges that she was placed in SHU (1) without allowing her access to programs, privileges, education and work; (2) without access to feminine sanitary products for her menstrual period; and (3) without documenting (a) the basis for the facility's concern for the inmate's safety, and (b) the reason why no alternative means of separation can be arranged. As a result of these breaches, Plaintiff alleges she suffered severe physical and emotional injury, depression, post-traumatic stress, embarrassment, and other damages. (Doc. # 50 at ¶¶ 128-142).

B.    **Summary of the Arguments**

Defendant contends that: (1) based on the court's March 4, 2025 Memorandum Opinion, the amended complaint improperly exceeds the scope of the court's leave to amend; (2) the claims the court previously dismissed should again be dismissed; (3) private parties would not be liable under the circumstances alleged; (4) the claims are barred by the intentional torts exception; and (5) the claim regarding Plaintiff's SHU placement fails to plead facts which could establish the elements of a negligence claim. (Doc. # 53 at 8-21).

Plaintiff responds that (1) the Amended Complaint does not exceed the scope of the court's leave to amend; (2) Plaintiff does not seek to reassert dismissed claims; (3) private parties would be subject to liability under the circumstances of this case; (4) the intentional tort exception does not shield Defendants from their antecedent and subsequent negligence; and (5) Plaintiff adequately pleads damages in Counts II and III of the Amended Complaint. (Doc. # 56 at 4-17).

Defendant's reply reiterates its arguments about the scope of the court's leave to amend, that private parties are not liable under similar circumstances regarding the SHU placement and investigation, that the intentional tort exception applies, and that Counts II and III fail to plausibly allege a claim. (Doc. # 57).

The court addresses each of these arguments below.

C.    **The Amended Complaint Does Not Exceed the Court's Leave to Amend**

Defendant argues that the court "granted leave to amend only for 'claims based on Hand's failure to report or intervene . . . .'" (Doc. # 53 at 10 (citing Doc. # 29 at 10-11, 18)).

A court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when the underlying facts or

circumstances relied upon by a plaintiff may be a proper subject of relief." *In re Engle Cases*, 767 F.3d 1082, 1108-09 (11th Cir. 2014) (quotations omitted).

On August 25, 2025, Plaintiff filed a Motion for Leave to File Amended Complaint. (Doc. # 48. Plaintiff attached a copy of the proposed Amended Complaint to the Motion. (Doc. # 48-1). On August 26, 2025, the court granted the motion for leave to amend. (Doc. # 49). As the court granted leave to amend following the filing of Plaintiff's Motion and proposed Amended Complaint, Plaintiff did not exceed the leave granted by the court.

### D.    The Eleventh Circuit's Recent *Doe* Case

On February 26, 2026, the Eleventh Circuit issued a decision in *Doe, 1 v. United States*, 166 F.4th 1255 (11th Cir. 2026). In that case, "three children suffered physical and emotional abuse by two employees at a government-owned childcare center." *Id*. at 1257. The children's parents sued the United States on their children's behalf alleging the United States was negligent in failing to protect their children. *Id*. "The district court dismissed the parents' claims for lack of subject matter jurisdiction based on sovereign immunity because the court concluded that the claims fell under the intentional tort exception to the [FTCA]." *Id*. The district court also denied the parents leave to amend their complaint because it found any amendment would be futile. *Id*.

On appeal, the Eleventh Circuit vacated the district court's dismissal of the parents' claims and the denial of their motion to amend. *Id*. First, the court noted that the defendant (the Air Force) voluntarily adopted certain criteria setting forth "rules requiring daycare staff at the Center to, among other things, prevent physical and psychological child abuse, report suspected child abuse, place on administrative leave any person under investigation for child abuse . . . ." *Id*. at 1258. The court then explained the FTCA and its intentional tort exception:

> As a sovereign entity, the United States is immune from suit unless it consents to being sued. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015).

11

"Through the enactment of the FTCA, the federal government has ... waived its immunity from tort suits based on state law tort claims." *Id*.; *see* 28 U.S.C. § 1346(b). Because the government consents to being sued, it may do so "according to whatever terms it chooses to impose." *Id*. at 1321-22. "[T]he fact that a federal employee has failed to perform duties imposed by federal law is insufficient by itself to render the federal government liable under the FTCA." *Id*. at 1324. Instead, plaintiffs must identify a state tort cause of action. *Id*. Courts must strictly adhere to the conditions on which the government consents to being sued and cannot recognize an exception absent from the waiver. *Id*. at 1322. If the United States has not waived its sovereign immunity from a plaintiff's claims, we lack subject matter jurisdiction to hear the case. *Id*.

The United States has limited its waiver of immunity from lawsuits based on state law tort claims with the FTCA's intentional tort exception. *Millbrook v. United States*, 569 U.S. 50, 52 [] (2013); 28 U.S.C. § 2680(h). The *exception preserves immunity from suit for "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights*." *Millbrook*, 569 U.S. at 52 [] (citation modified) (quoting 28 U.S.C. § 2680(h)). "The phrase 'arising out of' is interpreted broadly to include all injuries that are dependent upon one of the listed torts having been committed." *Zelaya*, 781 F.3d at 1333. Therefore, a claim arises from a "§ 2680 excepted tort if the governmental conduct that is essential to the plaintiff's cause of action is encompassed by that tort." *Id*.

*Id*. at 1260 (emphasis added). Negligence is not listed as a tort to which the exception applies.

The court noted a distinction relevant to assault cases that had been recognized by the Supreme Court in *Sheridan v. United States*, 487 U.S. 392 (1988). *Id*. at 1260-61. Citing *Sheridan*, the Eleventh Circuit explained that there was "a difference between 'claims based entirely on an assault or battery' and claims 'arising out of two tortious acts, one of which is an assault or battery and the other of which is a mere act of negligence[.]'" *Id* at 1261 (quoting *Sheridan*, 487 U.S. at 398, 403). The court held that "the intentional tort exception, § 2680(h), does not apply when an FTCA claim arises out of the government's breach of an independent duty which, in turn, led to an excepted intentional tort." *Id* at 1264.

As in *Doe*, Plaintiff here alleges that the BOP voluntarily adopted certain rules that all BOP employees are required to follow in its Program Statements. (Doc. # 50 at pp. 5-9). Plaintiff alleges that the Program Statements were designed to protect inmates against sexual abuse. (*Id*.). For

12

example, Program Statement 3420.11 mandates that: "An employee shall not engage in, or allow another person to engage in, sexual behavior with an inmate." (*Id.* at ¶ 29). Program Statement 3420.11 also requires that BOP facilities take steps "to protect inmates against sexual abuse" including the use of "video monitoring" where warranted. (*Id.* at ¶ 30). BOP Program Statement 5234.12, § 115.13, requires that BOP facilities consider specific matters in formulating a plan "to protect inmates against sexual abuse" including limiting the possibility that inmates and staff will be left alone and unmonitored. (*Id.* at ¶¶ 31-32). And BOP Program Statement 5324.12, § 115.71 requires "prompt[], thorough[], and objective[]" investigations into all reports of sexual abuse or harassment. (*Id.* at ¶ 31).

Plaintiff alleges that these Program Statements establish the independent duties that she alleges BOP employees breached and that give rise to her negligence claims. She further alleges that the employees' breaches of these Program Statements subjected her to sexual assault and abuse. Because the claims in Plaintiff's Amended Complaint allege "a breach of an independent duty which, in turn, led to an excepted intentional tort[,]" "the intentional tort exception, § 2680(h), does does not apply[.]" *Doe*, 166 F.4th at 1264.[2]

---

[2] Judge Newsom's concurrence in *Doe* says that this result is required by *Sheridan* as well as the Eleventh Circuit's decision in *Alvarez v. United States*, 862 F.3d 1297 (11th Cir. 2017), but for slightly different reasons. *Id.* at 1266-67. As he explained:

> The upshot, it seems to me, is that a plaintiff in a case like this one—involving two torts, one intentional and another sounding in negligence—has (at least) two paths: First, per *Alvarez*, he can pursue his negligence claim if it involves the breach of a duty unconnected to the intentional tortfeasor's employment status, *see* 862 F.3d at 1308; and second, per *Sheridan*, he can pursue the claim if the intentional tortfeasor was either not a government employee or a government employee acting outside the scope of his employment, *see* 487 U.S. at 400[].

*Id.* Under Judge Newsom's reasoning, Plaintiff's claims here survive Defendant's Motion for two reasons: first, she can pursue her negligence claims because they are "unconnected to [Lopez's] employment status;" and second, she can pursue her claims because Lopez was a "government employee acting outside the scope of his employment" when he assaulted her.

This court is bound by the majority opinion in *Doe*. Under *Doe*, Plaintiffs' negligence claims based on Defendant's employees' breaches of Defendant's assumed duties fall outside the FTCA's intentional tort exception. *Doe*, 166 F.4th at 1264.

**E.    Private Parties Could Be Held Liable Under Similar Circumstances**

To state a viable claim for negligence under Alabama law, Plaintiffs must allege "a duty, a breach of that duty, causation, and damage." *Aliant Bank, a Div. of USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 907 (Ala. 2017) (citing *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001) (in turn citing *AALAR, Ltd. v. Francis*, 716 So. 2d 1141, 1144 (Ala. 1998))).

Plaintiff has alleged that Defendant adopted certain rules imposing duties on all BOP employees as set forth in its Program Statements. Plaintiff has plausibly alleged duties under each of the Counts of her Amended Complaint. In her various claims contained in the Amended Complaint, Plaintiff has alleged that multiple BOP employees breached these duties. And, Plaintiff has plausibly alleged that she suffered damages caused by BOP employees' breaches of these duties.

In Count I, Plaintiff alleges that BOP employees' breached their duties to provide her a safe and secure environment and to report isolation and assault causing her to suffer multiple assaults and other damages. (Doc. # 50 at ¶¶ 86-114). In Count II, Plaintiff alleges that BOP employees' breached their duties to conduct a prompt, thorough, and objective investigation into reported and suspected sexual abuse causing her to suffer psychological and emotional injury, depression, post-traumatic stress, embarrassment and other damages. (*Id*. ¶¶ 115-127). And in Count III, Plaintiff alleged that BOP employees' breached their duties to not use SHU placement as a means of punishment, not to place inmates in SHU for longer than thirty days, and to ensure

14

that inmates in SHU have proper access to programs, privileges (sanitary products), education and work causing her to suffer psychological and emotional injury, depression, post-traumatic stress, embarrassment and other damages. (*Id.* ¶¶ 128-142). Thus, Plaintiff has plausibly alleged duties, breaches, causation, and damages supporting each of her claims that would also subject private parties to liability.

## V.    Conclusion

For all of the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Certain Claims (Doc. # 53) is **DENIED**.

**DONE** and **ORDERED** this March 30, 2026.

**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE

15